UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TECHNICAL PROSPECTS LLC,

    Plaintiff,

v.                                          Case No. 06-C-0174

ATLAS VAN LINES, INC.,

    Defendant.

**DECISION AND ORDER**

Plaintiff Technical Prospects LLC sued Defendant Atlas Van Lines, Inc., under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, after a magnetic resonance imaging (MRI) machine that Technical Prospects shipped via Atlas was destroyed in transit. Federal jurisdiction arises under 28 U.S.C. § 1331. Claiming that it has limited its liability to $5,448.00, Atlas has now moved for summary judgment. For the following reasons, its motion will be denied.

**FACTS**

In ruling on Atlas' motion for summary judgment, the court considers the facts in the light most favorable to Technical Prospects, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Technical Prospects is a limited liability company based in Greenville, Wisconsin, that is in the business of buying and selling specialized medical equipment. (R. Probst Aff. ¶¶ 2-3.) In late July 2005, Robert Probst, Technical Prospects' sole member, called Mark

Smith, Atlas' agent in Massachusetts, and told him that a buyer in Edinburg, Texas had agreed to purchase an MRI for $85,000 and that Technical Prospects needed to ship it to the buyer. (*Id*. ¶ 6.) Smith offered Technical Prospects insurance to cover damage to the MRI during transit. (*Id*. ¶ 7.) Probst stated that he wished to insure the MRI for $85,000; Smith agreed to do so and told Probst that Technical Prospects would be charged an additional premium accordingly. (*Id.* ¶ 8.)

On August 9, 2005, Atlas' driver arrived at Technical Prospects' warehouse in Greenville, Wisconsin, to pick up the MRI. (J. Probst Aff. ¶ 2.) While at the warehouse the driver filled out a bill of lading on a pre-printed form and presented it to Technical Prospects' authorized agent to sign. (*Id.* ¶ 3.) The bill of lading contained the following language:

> **VALUATION**: The released rates for shipments moving under this bill of lading vary with the services provided under the tariff and the Carrier's tariff is incorporated into the bill of lading for determination of which released rate applies. Shipper has released the entire shipment to a value not exceeding:
>
> (TO BE COMPLETED BY THE SHIPPER BELOW)
>
> ☐ The maximum released rate set forth in the tariff for shipments on which the specified services are provided, which may be either $.60 per pound per article or $5.00 per pound. (This is not insurance but a limit on carrier's liability.)
>
> ☐ The declared value for the property of $ _____. If this amount exceeds the maximum released rate in the tariff, Carrier shall obtain insurance in this amount on shipper's behalf for the charges set forth in the tariff.
>
> SHIPPER'S SIGNATURE X _____ DATE _____
>
> **IF NO DECLARATION IS MADE, THE SHIPMENT SHALL BE DEEMED RELEASED TO THE VALUE SET FORTH IN THE TARIFF.**

(Compl., Ex. A.) Technical Prospects' agent did not complete this section of the bill of lading. (*Id.*) Atlas' driver did not orally communicate to the agent that leaving the section blank could limit Atlas' liability. (J. Probst Aff. ¶ 4.)

The MRI was in good condition when it left the warehouse in Greenville. However, it was

2

severely damaged by the time it reached the buyer in Edinburg. The buyer refused to accept the MRI in its damaged condition, and it has no salvage value. (R. Probst Aff. ¶¶ 10-13.) On November 19, 2005, Alan R. Jobe, Atlas' director of specialized claim assessments, represented to Technical Prospects' counsel that "Technical Prospects did secure valuation coverage with [Atlas] in the amount of $85,000." (Wroblewski Aff., Ex. I.) However, Atlas now maintains that Jobe's representation was erroneous. (Jobe Aff. ¶ 2.)

The released rate for the shipment under the bill of lading and applicable tariff was $.60 per pound per article. Given that the MRI weighed 9,080 pounds, this rate would limit Atlas' liability to $5,448.00. (DPFOF ¶¶ 13-14.) Atlas' tariff, however, also contains the following language:

> When an exhibit shipment is released to a value exceeding the maximum liability as stated on the application page of the transportation rate section on the bill of lading and at the specific request of the Shipper, the Carrier shall provide a certificate of transit coverage for EXHIBITGUARD PROTECTION. The charge for this extended coverage will be $4.50 per $1,000 for the total value declared, subject to a minimum charge of $45.00.

(Wroblewski Aff., Ex. K.) Atlas' invoice for the shipment listed a charge to Technical Prospects in the amount of $382.50 for an "insurance certificate." (R. Probst Aff., Ex. H.) During discovery, Atlas produced a document entitled "Transit Coverage: Evidence of Insurance." (Wroblewski Aff. ¶ 5, Ex. J.) The document represents that for a premium of $382.50, "insurance has been effected in the amount of $85,000 on all the property covered under filed tariff . . . to be transported on or about 08/05/2005 from GREENVILLE, WI to EDINBURG, TX." (*Id.*)

## ANALYSIS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and

3

admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Carmack Amendment, which was enacted by Congress to prevent carriers from effectively insulating themselves from liability for damages to goods shipped in interstate commerce, provides that "a common carrier is liable for all losses which occur while the goods were being transported by it, unless the carrier can demonstrate it is free from fault." *Pharma Bio, Inc.*

4

*v. TNT Holland Motor Express, Inc.*, 102 F.3d 914, 916 (7th Cir. 1996). Carriers are free, however, subject to the provisions of the Carmack Amendment, to limit their liability to the declared value for shipments transported by them. The pertinent provision of the Act states:

> a carrier providing transportation or service . . . may . . . establish rates for the transportation of property . . . under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation . . . .

49 U.S.C. § 14706(c)(1)(A). Carriers may limit their liability by doing four things:

> (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.

*Hughes v. United Van Lines, Inc.*, 829 F.2d 1407 (7th Cir. 1987).

As noted above, there is substantial evidence that Technical Prospects chose to have its shipment insured at its full value of $85,000 and that Atlas agreed to do so. Robert Probst, who contacted Atlas to arrange for the transportation of the equipment, states that he specifically requested that the shipment be insured for $85,000, and that Atlas' agent agreed to provide such insurance. The invoice Atlas later sent Technical Prospects included the charge for insurance for the precise amount of coverage requested, and Atlas has produced documentation confirming that coverage was requested by Technical Prospect and provided by Atlas. If these facts are true, Atlas cannot reasonably claim it met each of the conditions required in order to limit its liability. Materially changing the terms of the parties' agreement by instructing the shipper's agent to sign a bill of lading after the shipment is loaded without explaining the significance of the change can hardly be considered a reasonable opportunity to choose between different levels of liability.

5

Atlas argues, however, that the parol evidence rule prohibits receipt of Technical Prospects' evidence that the parties agreed to insure the shipment for $85,000 in light of the unambiguous language of the bill of lading. Atlas' argument is predicated on basic principles of contract law. It is true that in determining whether the carrier obtained the agreement of the shipper with respect to the choice of liability, the court looks to principles of contract law. *Chandler v. Aero Mayflower Transit* Co*.,* 374 F.2d 129, 135 (4th Cir. 1967). "As a general rule, a shipper is conclusively bound by tariff rules of a carrier and parol evidence cannot be received to vary the terms thereof." *Thomas v. Trans World Airlines, Inc.*, 457 F.2d 1053, 1056 (3d Cir. 1972) But like all general rules, there are exceptions. The parol evidence rule has no application when the evidence being offered is of mutual mistake. *Federal Deposit Ins. Corp. v. First Mortgage Investors*, 250 N.W.2d 362, 365 (Wis. 1977) ("When the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their agreement, the terms of the writing may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress, or mutual mistake."). Here, a question of fact exists as to whether the parties made a mistake in reducing their oral agreement to writing. *Cf. Dover Farms, Inc. v. American Airlines, Inc.*, 268 A.2d 289, 292 (N.J. Super. Ct. App. Div. 1970) ("The undisputed evidence clearly leads to the conclusion that the full value was not placed on the air bill only as a result of the mutual mistake of the agents of the parties. Under these circumstances, we find that plaintiff is equitably entitled to be received [sic] from the result of this mutual mistake.")

Technical Prospects' evidence supports its contention that the parties agreed that the shipment would be insured to the amount of $85,000. The bill of lading on which Atlas relies was prepared and signed by individuals other than those who negotiated the agreement, who did not

6

undertake to re-negotiate the provisions of the agreement pertaining to the released value of the goods. Furthermore, even after receiving notice of the destruction of the MRI, Atlas continued to maintain that Technical Prospects had purchased insurance for the shipment. Atlas apparently did procure a certificate of insurance in the amount of $85,000 for the shipment. This evidence supports a finding that the failure to list the full value of the shipment on the bill of lading was the result of mutual mistake. In light of this evidence, Atlas' motion for summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that defendant's motion for summary judgment (Docket #10) is **DENIED.** The clerk shall set this matter on the calendar for a Rule 16 conference within the next ten days.

Dated this   10th   day of August, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
